**UNITED STATES of America ex rel. Robert Paul NELSON, Petitioner,**

v.

**John L. ZELKER, Warden, Greenhaven State Prison, Stormville, New York, Respondent.**

**No. 70–Civ. 5596.**

United States District Court, S. D. New York.

Nov. 23, 1971.

M. Warren Browne, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen., New York City, for respondent by Mortimer Sattler, New York City, of counsel.

## MEMORANDUM

CROAKE, District Judge.

This is a petition for a writ of habeas corpus brought under 28 U.S.C. § 2254, seeking relief from the use of an allegedly unconstitutional conviction for sentencing purposes in a later case. The subsequent conviction is not itself challenged.

Petitioner is presently in respondent's custody in the state prison at Stormville, New York, pursuant to a conviction of the crime of manslaughter in the first degree, Penal Law of 1909 § 1050 [1909] N.Y.Sess.L.1909, c. 88, see Penal Law § 500.05 (McKinney's Consol.Laws, c. 40, 1967); see also Penal Law § 125.00 et seq. (McKinney 1967), after a trial in the New York State Supreme Court, Bronx County, before Hon. Edward T. McCaffery, Justice, and a jury. At the time of sentence, on March 3, 1967 (six months before the effective date of the new Penal Law, Penal Law § 500.10 (McKinney 1967)), petitioner was presented with an information charging him under Penal Law of 1909 § 1943 with a November 9, 1956 robbery conviction in the United States District Court for the District of Columbia (Criminal Docket No. 820–56). Petitioner pled guilty to that information, thereby admitting the existence of the prior conviction, and was sentenced to from seven and a half to eight years' imprisonment.

Later on the same day, the Court ordered the petitioner brought before it, and noted that the Court had been made aware after the original sentence that New York's recidivist statute, Penal Law of 1909 § 1941(1), mandated a ten year minimum for second felony offenders convicted of manslaughter, first degree (transcription of allocution at sentence, at p. 7 ("record")); *but see* Penal Law, § 70.00 et seq. (McKinney 1967). Petitioner was thereupon "rearraigned" and resentenced to not less than ten nor more than eleven years in prison. The New York State judgment of conviction does not appear to have been appealed; this hardly means, however, that petitioner has failed to assert what he considers to be his rights.

The District of Columbia judgment of conviction was filed on November 9, 1956. Petitioner moved for reduction of sentence on February 6, 1957; the motion was denied on February 13, 1957, with the comment that petitioner was entitled to no relief. On March 9 petitioner moved, pro se, under 28 U.S.C. § 2255 for vacatur of sentence; this motion, the grounds of which are not apparent, was denied on March 12, 1957, with another certification that the petitioner was entitled to no relief. Accordingly, petitioner's pro se application for leave to appeal, made on March 21, 1957, was denied on March 25. Petitioner does not appear to have made any other motions or applications while incarcerated in the District of Columbia.[1]

---

1. Petitioner alleges, tangentially, that he was "not represented by counsel during the thirty day filing period in which to take an appeal." However, this issue,

Petitioner first sought to attack the use of the prior conviction for New York sentencing purposes by companion writs of error coram nobis, one filed on November 19, 1969, in the New York State Supreme Court, Bronx County, and one in the District Court for the District of Columbia on November 20 of that year. The New York petition was denied by a memorandum dated December 17, 1969; [2] the denial was affirmed without opinion by the Appellate Division, People v. Nelson, 35 A.D.2d 690, 314 N.Y.S.2d 699 (1st Dept. 1970). The District of Columbia writ was denied by order dated December 23, 1969, and filed January 5, 1970. No appeal appears to have been taken.

Rather, the present petition was then filed with the pro se clerk's office of this Court on December 21, 1970. The answer and traverse were subsequently received in that office, and the entire file was referred to the undersigned on February 5, 1971. By letter dated March 8, 1971, the Court informed the parties that the complexity and significance of the procedural and substantive issues involved warranted appointment of counsel, and assigned present counsel on its own motion, by coincidence one day before petitioner moved for such an assignment.

Counsel sought and obtained time to verify the facts of the case and to gather evidence to rebut respondent's argument, in answer to the original petition in this Court, that insufficient proof had been submitted concerning the circumstances of the prior conviction to satisfy petitioner's burden under 28 U.S.C. § 2254 (d) and (e). Counsel eventually filed a memorandum of law on September 24, 1971, with exhibits attached, to which respondent replied on October 6, 1971.

Meanwhile, petitioner sent the Court a total of eight letters containing various comments on the actions and arguments of both counsel.

### I

The issues presented by this petition fall into three general categories: procedural questions, the double jeopardy question, and the question of infringement of the right of counsel in the District of Columbia.

### EXHAUSTION

■ Petitioner faces two distinct procedural obstacles at this juncture: he must show that he has exhausted available state remedies, and at the same time avoid the implications of a prior decision on the merits. He apparently does this by arguing that the issue of right to counsel was never raised in the District of Columbia, either at trial or in one of the three post-trial motions, while at the same time arguing that the issue was raised and pursued in New York. With regard to the first half of the argument, the record as it now stands, despite the vigorous effort of counsel as well as this Court, does not permit any determination of what issues were raised by the District of Columbia motions. The right to counsel cannot, therefore, be said to be res judicata because no determination adverse to petitioner can be identified among the proceedings in the District of Columbia.

■ With regard to exhaustion of state remedies, the rule is clear that when a state utilizes a sister state's, or the District of Columbia's, conviction for its own sentencing purposes, it necessarily assumes the burden of defending the validity of the foreign conviction. United

which only appears as an isolated comment at page 5 of the Traverse, cannot be said to be adequately presented to this court at this time. Therefore, no opinion is intimated as to its merit.

2. The Court stated:
"The minutes of sentencing show that the defendant was sentenced as a second felony offender after admitting he was

convicted in Federal District Court and had no constitutional objection to that conviction. Moreover, the defendant has not submitted corroborative affidavits and public records to substantiate the claim that he was not represented by legal counsel at the time of his first conviction (Peo. v. Wimberly, 23 A.D.2d 684 [257 N.Y.S.2d 367.].")

States ex rel. LeNear v. LaVallee, 306 F.2d 417, 419 (2d Cir. 1962); United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir. en banc 1964), cert. denied, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964). Consequently, this petition does not and need not allege that there remains no avenue of attack in the District of Columbia upon the constitutionality of its conviction.

■ In recognition of petitioner's rights in this regard, the New York State Legislature provided in 1964 that defendants charged with being second offenders be explicitly notified of their right to challenge the constitutionality of the prior conviction. [1964] N.Y.Sess.L. 446. Petitioner has attempted to avail himself of this right, by means of the proper writ. People v. Machado, 17 N.Y.2d 440, 266 N.Y.S.2d 525, 213 N.E.2d 804, cert. denied, 383 U.S. 921, 86 S.Ct. 923, 15 L.Ed.2d 676 (1966), *but see* N.Y.C.P.L. § 440.20 (McKinney's Consol.Laws, c. 11–A, 1971), and his petition has been denied. On appeal, the denial was affirmed. While, as has been noted, petitioner's New York State conviction has apparently not been appealed,[3] this is immaterial for present purposes. The present substantive issues were eventually raised in the state courts, and pursued there to the limit. State remedies have therefore been fully exhausted in accordance with 28 U.S.C. § 2254(b). *See* United States ex rel. Bagley v. LaVallee, 332 F.2d 890 (2d Cir. 1964).

WAIVER

This is not to say that the prior conviction is necessarily open to attack in this court at this time, however. The 1964 amendment to the Penal Law of 1909, § 1943, *supra,* which recognized the right to challenge an out-of-state conviction used for sentencing purposes in New York, also provided that:

"The failure of the person accused to challenge the previous conviction

[at the time of filing of the information charging him with it] shall constitute a waiver on his part of any allegation of unconstitutionality *unless good cause be shown* for his failure to make timely challenge." (Emphasis supplied.)

See also N.Y.C.P.L. § 440.10 (McKinney 1971). Accordingly, respondent contends that a waiver in fact took place. The reply to this is that petitioner's then appointed counsel, however adequate for purposes of defense of the primary New York action and for subsequent presentation of matters in mitigation, nevertheless provided inadequate representation for defense against the information charging the prior conviction. Were this inadequacy proven, the statutory requirements for excusable "good cause" would clearly be shown. Petitioner, then, seeks to satisfy the statutory requirements for avoidance of waiver; the constitutionality of the statute is not attacked. For its constitutionality, *see, e. g.* McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■ Petitioner apparently presents an additional argument in this regard. At the time of arraignment on the information charging the previous conviction, the court clerk stated that petitioner "may also challenge the constitutionality of this Information" (Record, at p. 2). With hindsight, this appears to be a mere misstatement of "information" for "conviction"; nonetheless, it may well have confused petitioner and his counsel and thereby abridged his statutory right to be made aware of his opportunity to challenge the earlier conviction.

Furthermore, petitioner's failure to raise the challenge at the time of sentencing was clearly unintentional, without any strategic motivation. Some court should hear the merits of his argument. *See* Fay v. Noia, 372 U.S. 391, 426, 83 S.Ct. 822, 9 L.Ed.2d 837, et seq. (1962). Taking these arguments togeth-

3. No issue has been raised before this Court as to any denial of constitutional rights in view of the lack of a direct appeal of the New York State conviction. The Court therefore expresses no opinion on that subject either.

er, and in light of the already tangled procedural context of this petition, the Court will assume for present purposes that petitioner has shown sufficient good cause to permit him to assert the merits of the present petition.

## II

### DOUBLE JEOPARDY

It will be recalled that in New York, after having been sentenced to a maximum of eight years, petitioner was resentenced for the same crime to a term of from ten to eleven years' imprisonment. He now seeks to have the earlier sentence reinstated, with one ground being that of double jeopardy.

It would be useful to describe at the outset the case of Ex Parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874). In that case petitioner had been found guilty of the crime of theft of postal property (empty mailbags) of a value less than $25.00. The judgment was rendered on October 22, 1873, after a verdict of guilty in a jury trial in the Circuit Court of the United States for the Southern District of New York. The statute involved, Act of June 8, 1872 (now 18 U.S.C. § 1707), provided a maximum punishment of one year's imprisonment *or* a fine of not more than $200. [18 U.S.C. § 1707 provides for a relevant maximum of one year or fine of $500., *or both.*]

On November 3, 1873, the trial judge sentenced petitioner to one year's imprisonment *and* a $200. fine, and ordered him committed. The fine was paid into court on November 4. On November 8, on a writ of habeas corpus, the same court vacated the original sentence and resentenced petitioner to one year, with no fine. A second writ of habeas corpus was discharged, and certiorari was sought and granted. 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874).

The Supreme Court determined that petitioner must be discharged. It stated:

"For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? . . . The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it.

\* \* \* \* \* \*

"And so it is said that the judgment first rendered in the present case being erroneous must be treated as no judgment and, therefore, presenting no bar to the rendition of a valid judgment. The argument is plausible but unsound . . . The judgment first rendered, though erroneous, was not absolutely void. It was rendered by a court which had jurisdiction of the party and of the offense, on a valid verdict . . .

\* \* \* \* \* \*

"We are of the opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him [the fine], the power of the court to punish further was gone; that the principle we have discussed then interposed its shield, and forbade that he should be punished again for that offense." *Supra*, 85 U.S. at 163, et seq.

It is evident from the above that the narrow *ratio decidendi* of *Lange* was the time sequence of that case: at the time of resentence, the alternative maximum sentence, the fine of $200.00, had been fully executed. The money could not be refunded. Indeed, since petitioner had spent five days in prison, he had already been punished in excess of the statutory maximum. Had this not been the case the result might well have been different.

Nevertheless, the above-quoted principles retain their vitality and applicability to the instant petition. They compel this Court to reconcile the legitimate state interest in determining the periods of imprisonment for violation of state laws and in choosing the indeterminate form of sentence, *see* Penal Law § 70.00

(McKinney 1967), with the constitutional requirement of avoidance of double jeopardy, as well as with any other applicable constitutional guarantees, such as due process, speedy trial (*see* F.R. Crim.P. 32(a)) and avoidance of cruel and unusual punishment.

■■ Petitioner's argument is that, from his point of view, the Court's attempt to correct the prior illegality in his sentence amounted to a second, consecutive, sentence of from two and a half to three years for the same offense, in violation of his constitutional rights. He cannot be heard to argue that the prior sentence was itself valid; to allow this argument would be to accept the proposition that courts may effectively ignore statutory minima. Neither can he be heard to argue that the illegal sentence voids the conviction, and justifies discharge. People ex rel. Emanuel v. McMann, 7 N.Y.2d 342, 197 N.Y.S.2d 174, 165 N.E.2d 187 (1960).

Petitioner's constitutional argument would be weightier had he served any substantial portion of his first sentence, as did *Lange.* He did not; under former § 231 of the New York Correction Law (McKinney's Consol.Laws, c. 43, 1968), repealed by [1970] N.Y.Sess.L. 476 § 45, for computational purposes the term of imprisonment had not yet begun at the time of resentence, although credit for time served might have been obtained. *See* Penal Law of 1909 § 2188 (last sentence), Penal Law § 70.30(1) (McKinney 1967).

Petitioner's first sentence was illegally short, in violation of § 1941, *supra,* as the sentencing court correctly recognized shortly after sentence had been imposed. The situation is therefore distinguishable from two others: that involving modification upwards of prior legal sentences, a procedure which is clearly constitutionally abhorrent, and that in which the initial sentence had been excessive, as in *Lange, supra,* and in United States v. Sacco, 367 F.2d 368 (2d Cir. 1966).

In situations such as *Sacco's* and present petitioner's, the general rule is that:

"Fixing the limits of the punishment to be imposed for crime is a legislative function. It is the duty of the [court] to impose the sentence which it regards as appropriate within the limits thus fixed . . . . Where the sentence imposed is at variance with the statutory requirements, it may be corrected to conform with the provisions of the statute even though the prisoner did not appeal from the judgment embodying the invalid sentence and has already served part of his term of imprisonment. The correction is to be made not by discharge of the prisoner but by an appropriate amendment of the invalid sentence . . ." Ruiz v. United States, 365 F.2d 500 (3rd Cir. 1966).

Bozza v. United States, 330 U.S. 160, 165–167, 67 S.Ct. 645, 91 L.Ed. 818 (1947). However, where the previous sentence had been fully executed, the defendant would have to be discharged. *Lange, supra.*

The methodology for amendment of an unexecuted or partially executed sentence containing an error or illegality is not always capable of easy determination; *see* Nicholson v. United States, 303 F.2d 161 (9th Cir. 1962); People ex rel. Sedotto v. Jackson, 307 N.Y. 291, 121 N.E. 2d 229 (1954); *c. f.* United States v. Sacco, *supra.* In federal criminal actions, the procedure would appear to be by motion under Rules 35 or 36, F.R. Crim.P., or under 28 U.S.C. § 2255, as the circumstances indicate. *See* 2 Wright, Federal Practice and Procedure § 582.

For New York State criminal proceedings, the subject is covered at the present time by N.Y.C.P.L. Article 440; *see also* Penal Law of 1909 § 2188, *supra;* Dodd v. Martin, 248 N.Y. 394, 399, 162 N.E. 293 (1928).

■ It may be unfortunate that petitioner's expectations were originally misdirected by the New York sentencing court. However, upon discovery of the error, that court was obliged to correct

the sentence. The question then becomes whether the second sentence was proper.

At the time of resentence, the breadth of discretion available on a normal sentencing was absent. The only question for the court at that time was the determination of the proper transformation of its previously expressed intent into a lawful sentence. In this regard there can be no quarrel with the court's conclusion that the minimum sentence should be the statutory minimum of ten years.

However, the court also chose an eleven year maximum. This court does not reach the question of whether and to what extent New York's policy of indeterminate sentencing must give way in this situation to constitutional factors;[4] suffice it that a variance of one year between maximum and minimum appears improper in light of the previous variance of only six months. The choice of any maximum over ten years appears to have been an exercise of discretion; Penal Law of 1909 §§ 2191, 2192, at a time at which discretion was no longer present. At a minimum, the last six months would appear to be unjustifiable.

### III

RIGHT TO COUNSEL

Petitioner's second substantive argument is that the District of Columbia's procedures denied him the constitutional right to assistance of counsel at every critical stage of the proceedings. The issue, which is not less substantial than the previous one, may nevertheless be dealt with more summarily.

It appears from the records that petitioner was not represented by counsel at the arraignment, and therefore that a not guilty plea was ordered to be entered for him. Petitioner's counsel appears to be of the opinion that a preliminary examination was not held pursuant to Rule 5, F.R.Crim.P., as in effect in 1956. Petitioner's own comments are more equiv-

ocal; but in any event, there is no suggestion that anything elicited from petitioner before his representation by counsel was ever used against him. Counsel was eventually appointed on August 16, 1956, approximately one month after petitioner was first held to await the action of the grand jury, on July 21, and participated at all stages of the trial thereafter.

■ ■ The issue thus presented is whether failure for 26 days to appoint counsel to advise petitioner of his rights prior to arraignment and preliminary hearing was itself deprivation of a right guaranteed by the Sixth Amendment. The Supreme Court, in declaring that arraignment was a critical stage, nonetheless left this question open in Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), *but see* opinion of Harlan, J., at 19–21, 90 S.Ct. at 2008–2012. This opinion left undisturbed McGill v. United States, 121 U.S.App.D.C. 179, 348 F.2d 791, 793 (1965), in which the District of Columbia Court of Appeals considered the arguments herein raised by petitioner and his counsel, and rejected them. No purpose would be served by an elaboration of counsel's arguments in this regard; this court is constrained to follow the precedents. The previous conviction being constitutionally acceptable, and valid where imposed, second offender treatment was mandatory in New York.

### IV

Petitioner may well take small comfort in the fact that this court, after commiserating with him, nevertheless finds itself unable to do more than question the potential last year of an eleven-year-maximum sentence. The fact that, had petitioner's crime been committed six months after the date of sentence, the court would have sentenced under the new Penal Law, wherein the first sentence would have been valid, will not

---

4. Judging from post-trial applications received in this Court from petitioners in New York State prisons, sentences of from ten to ten and a half years are not unknown. *See, e. g.,* Brown v. Infeld, S.D.N.Y. Docket No. 71 Civ. 2114.

make the present situation more palatable. Penal Law § 5.05 (McKinney 1967); *but see* Penal Law of 1909 § 38. Neither will the fact that petitioner's situation might well have been different had the error been detected only after execution of sentence had begun; Penal Law of 1909 § 2188, *supra.*

In any event, the United States District Court is not the proper one for resentencing *nunc pro tunc* on a state offense. Therefore, the only relief to be granted is as follows: the writ will issue to the extent of directing the New York State Attorney General, or his assistant, to bring petitioner before an appropriate New York State court for the purpose of correction of sentence. See N.Y.C.P.L. §§ 440.20(3), 440.30.

No hearing has been held because respondent has not disputed petitioner's factual allegations, as presented by counsel. The parties' differences have been on questions of law, not on the facts.

The Court expresses its appreciation to M. Warren Browne, Esq., assigned counsel for petitioner, for his efforts in his client's behalf.

So ordered.